Yes, thank you, your honor. May it please the court, Libby Baird on behalf of appellant Daniel Phoenix, I'd like to reserve five minutes of my time for rebuttal, please. This court should reverse for two reasons. First, the district court should not have reconsidered Judge Dillon's opinion holding that Phoenix's claim could go to trial. Dr. O'Heye sought a do-over on a legal argument that he admitted he could have raised earlier. Second, Phoenix didn't need an expert witness to survive summary judgment. His deliberate indifference claim is straightforward, and he supported it with evidence like lay testimony and medical records that a jury could easily understand. Mr. Baird, before we get into that, I want to just ask to officially confirm a third argument you did not make. We are taking it as a given that Judge Cullen permissively excluded the expert, right? There is no challenge to the decision to exclude the expert. We did not appeal the district court's decision on the motion in limine. No, your honor. If the court doesn't have any questions as an initial matter, I'd like to start with the reconsideration issue. And the district court's decision on the reconsideration issue was wrong for three reasons. First, the lack of an expert in this case was never new. Mr. Phoenix lacked expert testimony before Judge Dillon at time one, and also before Judge Cullen at time two. Dr. O'Heye could and should have raised it then as his counsel conceded at the summary judgment hearing below. That's at JA 411. Granting reconsideration on facts like these invites re-litigation of settled issues and gamesmanship. Well, I mean, it does if the district court lets you, right? I mean, I think everybody agrees that if Judge Cullen had wanted to say, what are you talking about? We already did this. We're not doing this again. They would have, well, first, that would be interlocutory, so they wouldn't have been able to appeal that. And second, even if they tried to appeal that, it strikes me they would have had an extraordinarily difficult time. I mean, other than the American, we have all these statements that say things like you shouldn't do it lightly, you shouldn't do it unless you have a good reason. But when I look at the cases, it's almost always in the context of saying the district court didn't abuse its discretion by doing whatever it did. I think it's only the American tobacco case where we actually said it was an abuse of discretion. And that case looks really different to me. That's like, like literally nothing has changed. And this is because you're going to tell me nothing's changed here. But in that case, the district court judge provided like no explanation at all and whatever else you can say about what Judge Collin did, it's not like he didn't explain why he was doing this, right? He gave a reason for why he was doing this. I agree, your honor, that the reconsideration decision is a discretionary call. It's reviewed for abuse of discretion. But, you know, a legal error is by definition an abuse of discretion. And U.S. tobacco makes clear that the three acceptable bases on which a court can reconsider a prior interlocutory order. It calls them the Rule 54B bases. And it doesn't say that there's sort of another category out here. Now, Judge Collin. You agree this case is different from American tobacco in the sense that in that case, the district court judge like literally did not say why we're taking this up again. Judge Collin did provide some explanation here, your honor. But, you know, he in our view, he tried to shoehorn something that wasn't new evidence into the new evidence exception. I think Judge Collin rightly recognized that the 54B standard applies in this context. And, your honor, just to your honor's point about in U.S. tobacco, nothing had changed here. Nothing changed. Dr. Ohai's argument at summary judgment in no way depended on the exclusion of experts. It's not as if there was an expert report or expert testimony in the record at time one and Judge Dillon denied summary judgment on the basis of that testimony and then experts were excluded. That would sort of manifestly change the evidentiary landscape before the district court. And that's just not what we have happening here. Dr. Ohai's argument was that Mr. Phoenix lacked quote affirmative expert evidence. That's what counsel said at the summary judgment hearing at JA 414, I believe. And that was equally true before Judge Collin and Judge Dillon. Can I ask you then, I mean, this is not an argument they've really made, but I mean, if we're going to start getting procedurally persnickety, why isn't there an argument that you're a stop from arguing that you don't need an expert given that you literally told Judge Dillon that you needed an expert? Your honor, counsel's statements below have to be understood in the context in which they were made. Counsel below argued in the course of asking more time for trial. It was in the context of a brief, which is the statement that Judge Collin relied on in which appellees cite in their brief. And counsel in no way, um, you know, conceded summary judgment and in no way said that an expert is required as a matter of law. I'm going to quote directly what counsel said, quote, requires the testimony of a medical expert. And I guess your argument is by requires, I mean, that was like the sort of standard hyperbole lawyers tell judges when they're asking for things like, I need this. And you're like, well, I don't mean I literally can't. So counsel frequently says I need an extension and we understand them to mean like, I'd really, really like an extension. I have a really good reason for an extension. My life would be a lot easier if I gave me an extension, but not that I will be literally incapable of filing a brief unless you give me an extension. So I understand that in, in her statement, she does say requires, I would point your honor to sort of earlier in that sentence where she says, understand undersigned counsel strongly believes that plaintiff's case would benefit from an expert. And just because Phoenix's counsel below thought that an expert might be helpful again, in no way says that an expert would be required as a matter of law. Counsel below contested summary judgment. She appeared at the hearing and in no way conceded it. And I think that's evident by the fact that judge Cullen didn't treat summary judgment as, as conceded your honor. I'd like to sort of move on to address, you know, the, the main argument, why FLEs say that the reconsideration standard doesn't apply here. You know, this court's cases say that it clearly applies to interlocutory orders. Denials of summary judgment are, you know, by definition, interlocutory. There's no reason it wouldn't apply here. And this court has applied the standard in the context of denials of motions. And we cite those cases in our brief. So on the reconsideration issue, if the court decides the case on that ground, the proper remedy would be to reverse judge Cullen's order with instructions to reinstate judge Dillon's order. And that's the remedy that was given in U.S. tobacco. Can I ask you then about, without understanding, you're not waiving the reconsideration, but I'm like, so the merits of what he did, which I also think you have an argument, I know you have an argument, but like asking us to draw the third circuit's line from Pearson versus Prison Health Service, is that like the distinction, like when you need an expert, when you don't? I think Pearson provides a helpful framework, your honor. I think that our, our test is, is fairly straightforward. Our test is whether record evidence, you know, where the record evidence supports the deliberate indifference elements, and a jury can understand that evidence and determine the facts and issue. A plaintiff doesn't need an expert to survive summary judgment. Now the third circuit's decision in Pearson, I think is very helpful for us, because there the court says that basically when you have a denial of treatment claim, you don't need a standard of care expert at all. It's, and, you know, Mr. Phoenix is claiming that he was wholesale denied treatment, not that he was given some inadequate treatment. Well, I guess you would need one, maybe you don't need an expert. So the basic idea is once we establish that I have a medical condition, because we have to establish that I have a medical condition, once we establish that I have a medical condition, that's like a real serious medical condition, in your views, then once I establish that they didn't do literally anything at all, you don't need expert testimony at that point. That's the basic line you're drawing? Well, your honor, yes, I think that if, if, you know, there's, there's a serious medical condition, which we have here, if there's an acknowledged treatment, which we have here, the treatment for celiac disease is a gluten-free diet, when that treatment is, is denied, that's simple and straightforward. A jury can understand that, so there's no need for, for expert testimony. Can I ask you on that, so, I agree probably not to establish liability, but one question that has occurred to me, how can you show damage, like, what damages can you get without an expert? Because your client presumably will say, I was given a diet with gluten, and then the following unpleasant things happened to me. How can you establish causation without an expert witness? Well, your honor, where, I think it goes to, to what we were just discussing, where you have a serious diagnosis that requires a treatment, where that treatment was denied, courts have held that a jury can infer causation. There's a whole line of decisions in the Seventh Circuit, and McDonald is one of those cases. Other evidence that goes to causation, Dr. O'Hei's own testimony here confirms that Mr. Phoenix's symptoms came from celiac in a denial of a gluten-free diet, when Mr. Phoenix reported to Dr. O'Hei that he had serious symptoms, like severe abdominal pain. You're not contending here, are you, that summary judgment, there are going to be cases where the case to such an extent that summary judgment would be valid. I mean, there, certainly a district court can take into account the absence of expert testimony on the standard of care as one factor in granting summary judgment. Is that not correct? You're just, you're just objecting to it as a categorical rule. My answer to your Honor's question would be the, the basis in deliberate indifference claims is the farmer prongs. Some courts have held that standard of care is sort of encompassed in the subjective prong, because where there's a violation of a standard of care, it's more likely that you might have deliberate indifference. What I'm saying is, you know, that, even if you are going to say that it's not as, expert testimony is not necessary as a categorical matter, it can be enormously helpful to a plaintiff's case in surviving summary judgment, because when you look at most of the medical malpractice cases throughout the, in the states, and almost all of the states, a medical malpractice claim would require some kind of expert, and it medical malpractice statutes many times would deem the absence of expert testimony as fatal. And so are we running a risk here of creating a real tension between medical malpractice suits on the one hand and prison litigation on, on the other? I know people are, some people, some folks, some litigants might say, well, that's fine, but at a certain point we're going to make serving the needs of inmates less palatable to doctors, because medical malpractice affords them so many, so many more protections. And what you're dealing with here is exactly the kind of thing that experts would be very helpful in. I'm not, I mean, a jury, a jury's view is certainly helpful as well, but most of these cases, or many of these cases, involve technical questions about what is the right prescription, or what is the right course of action. Most doctors have before them a range of reasonable options, and an expert can be quite helpful in elucidating those. So, you know, it may be that it's not categorically necessary to have an expert, but it also can significantly weaken plaintiff's case, and a large number of cases involving technical matters of medicine and exercising medical judgment. So, I can see it being fatal in a large number of cases, even if it's not categorical. You accept that? Not with respect to deliberate indifference claims, Your Honor, and I understand Your Honor's concern about sort of the, you know, maybe consistent standards between medical malpractice and deliberate indifference, but deliberate indifference claims, I don't think there's any tension, because they're just different sorts of claims. Deliberate indifference claims is different than medical malpractice, and medical malpractice, Your Honor, is right, under, you know, tort law under many states. No, when we see cases, I'll say, oh, well, it was deliberately indifferent not to prescribe this course of treatment. Well, it may not have been deliberately indifferent at all, as much as it was that in medical judgment. I see my time's expired, Your Honor. May I respond? Sure. So, you know, whatever Your Honor might think about whether expert testimony might be helpful in some cases, that, you know, this isn't one, because here the standard of care is exceedingly simple, and in the record we have a sworn affidavit from VDOC saying that expert testimony, or saying that a gluten-free diet is, quote, medically necessary when someone has been diagnosed with celiac, and so we think then that's at JA 319 and 320. So, no matter whether an expert would be helpful in some cases, it's certainly not required as a matter of law here where the standard of care is so simple. One thing on page 24 of your brief, you say it's an alternative ground, I think, to just to remand to the district court to let the district court consider the case free of legal error. If the legal error was the idea that expert testimony is categorically necessary, and we were to decide that it may be eventually useful but not categorically necessary, I think it seemed to me you were saying that one alternative ground would be to let the court, district court, consider the case free of the legal error. We think that this court can go ahead and decide whether an expert is required as a matter of law here. I understand it's not your preferred ground, I understand that, but the question is whether this is, it certainly, as I recall the brief, it certainly seems you threw it out as an alternative ground to affirmance. No, your honor, we would like the court to reverse on the expert issue and, you know, we'd like the court to adopt our test and applying that test, you know, I know what you want to do on that, but, you know, there's several stages of this, having the district court look at the whole situation free of the legal error and then it can, free of the misapprehension, it can decide whether or not there's an issue of tribal fact involved. Well, your honor, I think that, you know, the record evidence was looked at. One reason for remand might be for the district court to sort of parse the evidence of deliberate indifference, but we have Judge Dillon's opinion in the record sort of looking at the evidence and concluding that Mr. Phoenix could go to trial on his deliberate indifference claim, and so I think that the reason why the court might remand in some instances just doesn't apply as forcefully here because we have Judge Dillon's opinion, which, you know, Judge Collin did not disturb the evidence as credited by her. Well, I'm just concerned about treating the district court's job and prerogatives in the most respectful manner that I could, but thank you very much, and we'll hear from opposing counsel, and you also have some time for rebuttal. Good morning. May it please the court, I am Rosalie Fessier here on behalf of the Appley defendant Paul Ojai, MD. He was the institutional physician working at Dillon Correctional Center at the time in question. The question for the, the main question for the court today is whether the district court correctly determined that the absence of admissible expert medical testimony on the threshold standard of care causation and injury was fatal to plaintiff's deliberate indifference case here. How do we get around, how do we get around our earlier center case, which seems to say that it's not categorically necessary, we have to feel like we owe respect to circuit precedent regardless of what we might think in the first instance. There's the, there's the center case. It seems to indicate it's not invariably necessary. So correct, and Judge Collin acknowledged that it is not a categorical requirement that an expert we have to testify in every medical deliberate indifference case. He acknowledged the center case, center case, and that case is very different from this one, and what I think the court, I would like to clarify some of the recast facts here that appellant has made, and that is there is no, there was no long-standing well-documented diagnosis of celiac disease when Dr. Ojai treated Mr. Jamison or Mr. Phoenix. But that's not the question, is it? Is the question whether there is enough evidence to create a genuine dispute of material fact about whether Dr. Ojai knew he had celiac disease. Isn't that the only question in summary judgment? You're not the only, I mean, but not the only question in the case, but the, like this threshold question. It's not whether there's un-doc, there's un-questioned, documented. The question is, is there sufficient evidence that could allow a reasonable fact finder to conclude that your client knew he had celiac disease? And that requires expert testimony, and this is why, because at the time, the facts were, and Judge Collin recited them in his opinion, that Dr. Ojai had no confirmed diagnosis in the record of celiac. He just, You don't need a confirmed diagnosis. You could have the defendants on admission that they knew. And he initially gave it credit, but then as time, Right, he gave it, this seems like a terrible fact for you. He originally gave it credit. Why couldn't a jury conclude from the fact that he originally gave it credit that he knew? Again, you want to make defenses at trial? He could get on the stand and say, I didn't really know, and I was confused. But the fact that he originally gave it credit seems clearly enough evidence to say there's at least a genuine dispute of material fact about whether he knew. The question for the jury is not what he did when he initially credited the diagnosis. It's what he did when he learned of additional information that discredited that initial assumption of diagnosis. He learned things after he started, he's only been treating him a month. So this isn't a longstanding placenta case where you had years of insulin dependent diabetic who the physician there knew he was insulin dependent, knew he needed it, withdrew it on one occasion because he was combative, said, well, I want to give him a short term effect insulin and didn't give it to him. But the defendant physician in that case knew all that. And that was the evidence from the defendant. Here we have Dr. Ojai who says as of June or July 2nd, by that time after he's learned all this additional information, he doesn't believe he has psilocybin. Is this in the second declaration or the first? This is in both. Because you agree the district court didn't rely on the second declaration here, right? I believe that he did. I don't see anything in the district court's decision that relies on the second declaration or rules on the question of whether the second declaration is properly before him. Well, the fact that he didn't exclude it, I agree, because the court reached his decision on summary judgment based on the lack of expert testimony. But in the original declaration from Dr. Ojai, he says he did not believe, this is the Johnson Quinonez case, did not believe as of the time that he canceled the gluten free diet that he did not believe he had celiac. And why couldn't the jury conclude that's false? Like, I get that's his story and I get it might be the truth and I get the jury might believe him. Because it requires the expertise of experts to tell the jury, to explain to the jury, what is celiac? How do you diagnose it? Are these new information, the noncompliance, the eating of gluten off another tray, of the lack of clinical presentation? Can I ask you, so we did that analogy to medical malpractice. I get it. If a state supreme court wants to say to prove medical malpractice, you need an expert. I guess under the ERIE doctrine, they get to do that. Where in the federal rules of evidence or the federal civil procedure are courts authorized to say that certain types of claims require expert testimony as a categorical matter? I agree. And I don't think that the Judge Collins said that. We are not arguing that here. And I don't think that's what the law of the circuit is. I mean, you look at the Sinto case, it clearly says that there are instances, but that's the rare instance where you don't need expert testimony when the condition is so obvious. And when we know we have a, they use the terms of longstanding, pervasive history of a known condition. And when we're talking about the point in time here, that we're talking about is Dr. Ojai's subjective, which is deliberate indifference, his subjective belief based on objective evidence that he's seen. Now, his interpretation of that, which is uncontroverted, by the way, his interpretation of this evidence, new evidence, he determines he does not have celiac. You need an expert to say that he's a lot. Wait, expert is he's a liar. What does the expert say that that is not either is not reasonable. And also that, what steps should he have taken? Counselor, isn't that like someone has undisputed diagnosis of diabetes and your doctor sees you eating a Twinkie. Does that change your diagnosis? Of course not. But you're saying that because he, I heard that he was eating a bag of pretzels. So then it can't be celiac. Isn't that the same thing? That's not what happened here. Okay, what happened? His symptoms, bleeding, vomiting, did they change? Those are not indicative of celiac. There's no evidence in the record that the vomiting, which was never. Diarrhea is not. Councilwoman, are you telling the court that diarrhea is not one of the symptoms of celiac? Vomiting blood, which is why he was sent to. I'm asking you a question. Are you saying that diarrhea is not a symptom of celiac? No, I am not saying that. Okay, and then things, and didn't he continue to have that throughout the treatments? Reported diarrhea on occasion, and he was seen by outside medical providers at VCU who determined that he was stable. The problem we have here is the subjective belief, and this is the Johnson-Quinonez case where they believe the inmate was a malinger, and he had a pituitary tumor that led to complete blindness. And they knew all the information, all of the facts underlying the diagnosis of pituitary tumor, and they just didn't believe the plaintiff. They didn't believe the inmate. And here you have a similar situation where he gives him the benefit of the doubt, and I guess shame on him for doing that. Maybe he should have insisted on an elaborate battery of tests for celiac, but he went ahead and gave a credit, which is what Judge Collin called it, initially credited him with the presumptive report of celiac diagnosis. All right, he did that. But then additional evidence shows up. You say, wait a minute, wait a minute. The treatment, the treatment, it's incurable. You can't cure it. But that's what. You can't, no, no, not due respect. You can't cure it. The only thing you have to do is have a gluten-free diet. That's the only thing you can do. There is no evidence. There's no medical evidence in the record of that fact. I mean, it is. He did. He put it, he said at one point he put it on wheat-free, didn't he? So Dr. Ojai put him on the, he called it a special diet, no gluten, understanding that his understanding of what DOC would provide was not the gluten-free that celiac patients would want, but it was the best that he could do as a doctor. And so he gave him the gluten-free diet that he thought was available at DOC. And that, and the evidence also shows that he received that diet all the way through, despite the fact Dr. Ojai attempted to cancel it in July of 2018. But in any event, and Mr. Jamison argues that that wasn't a sufficient diet. But those aren't disputes of expert disputes. No, there is a... What does he need an expert for? He's an expert to show that it was a violation of the standard of care and deliberate, threshold violation of the standard of care to disbelieve the presumptive or what the initially credited diagnosis of celiac. And then if he sees all this evidence, what does the standard of care require him to do? Can I ask a question that followed up on Judge Gregory? Can I ask you, I want to know what the expert will testify to blank. And I want to be very clear. I don't want you to say standard of care or causation, because those are not in the text of the constitution. They're not in the text of Farmer. So I don't mean, what does he need expert testimony to prove? I want you to imagine, what is it this hypothetical expert would testify to? They would say what? And again, not the words, the standard of care is X, because I don't think that's in the text. What does the expert have to say in your view? He has to say that a physician of Dr. Ojai's position with armed with the facts that he had at that time, that the standard for medical physicians, what they knew and what they're trained to do is to take these steps. But that's not the dispute in this case. Again, I think, I mean, because it's not like there's no expert in this case. Your client is an expert. You agree that your own client is a doctor, right? He's a doctor. And I presume your client would agree that if someone has celiacs, the treatment is X, right? Or they could depose your client and he could say, if someone has celiacs, the treatment is X, right? Well, I mean, Dr. Ojai should not be forced to testify. This is not a criminal case. There's no right against compulsory self-incrimination in terms of providing an expert opinion. Why can't the plaintiff use the defendant's own testimony? Dr. Ojai could say or would say that it is a treatment of celiac. And again, we go back to, was he wrong? Was he deliberately indifferent when he canceled it based on his belief that he didn't have it? How do I know that was his belief other than him just asserting that was his belief? Why can't the jury say, with all due respect, given the evidence as a whole, a jury could find that when he said that, he was not telling the truth, which is what we have juries do. Well, this court in Johnson-Quinones was faced with the very same situation and found that on summary judgment, that the doctors were given the benefit of the doubt. There was, there's, here when we're talking about whether he should have continued him on the gluten-free diet regardless, like, or should he have ordered this test that we have on gluten sensitivity, it was suggestive of celiac. There are other tests out there, there's biopsies, there's other things, and there are other treatments. And again, Plaintiff Mr. Phoenix claims, and Judge Dillon was questioning, and that was an open question for trial, was whether there should have been a GI consult. So we're not just talking about basically a gluten-free diet, we're talking about this concept that there was other treatment out there that he was denied. And those are matters that are clearly within, that require an expert, because a jury is going to be left to speculate. What, I mean, a jury's not even going to maybe not know what celiac is. We sitting here may have an understanding of it, but in terms of what was known in 2018 when Dr. Ojai treated him, and then in the context of prison and corrections medicine, what is it that they are, what options do they have available in terms of diet, and then the fact that they have to face continually these issues with malingering patients and with lying patients, and those kinds of things that he has to take into consideration in making treatment decisions. And we need an expert on the standard of care to educate the jury on what a doctor should be doing. Let me ask you this. I understand you're trying very hard to make this a should-have-known case, as in that they're arguing that Dr. Ojai should have known that he has celiacs. If it is my view that there is a genuine dispute of material fact about whether Dr. Ojai in fact knew, does that defeat, I'm asking you to posit that. If I think there is at minimum a genuine dispute of material fact about not should have known that Dr. Ojai actually knew, how does that affect your arguments and what, if anything, remains? Well, then the question becomes, the next step in that question is if he actually knew he had celiac, the question is, what is the proper treatment for that and did he deprive him or did he give him unconstitutional level of treatment? And that does require expert testimony. Why? Because celiac is different from, so Judge Gregory already asked about synto and that's about epilepsy, right? Diabetes. Diabetes. Oh, sorry. I have a question I wanted to ask you about. That's diabetes. So we've established in the circuit that you don't always, in that situation, need, like, you don't need expert testimony to establish that someone who has diabetes needs insulin. That is not, that is something you don't need an expert to show and a complete failure to treat diabetes. So here's the epilepsy. Sorry, I was going to ask you this question about epilepsy. So imagine that the doctor knows that a patient has a history of epilepsy. We've established that they know that someone has epilepsy. And then one day they're walking by, basically the doctor then learns that in the last week the patient has had a seizure. So we know this person has a history of epilepsy and we know that in the last week the doctor knows they've had a seizure and the doctor does literally nothing. Do you agree you don't need an expert in that situation either? So why is that different from this? Because you have a known diagnosis. You have a firm... And again, I'm positing here there's a known diagnosis, or at least there's a genuine issue of fact about whether there's a known diagnosis. In those cases, you have the defendant physicians who were there present saying to, saying, yes, I, he had a longstanding diagnosis. I diagnosed him. This was the treatment that he needed. I knew this was the treatment he needed. And for whatever reason, he wasn't given that treatment. There was issues around why that happened. But the court said those, you did not, the plaintiff did not need an expert on those when it was so well settled in that case based upon what those doctors and what the evidence was. You could have a situation in a diabetes case where the person has not been diagnosed or just comes into a jail fresh from the street and says, I think I have diabetes or my doctor, my pediatrician told me I have diabetes. And the doctor says, okay, well, we'll see about that. But then says, you know, I don't believe you now. I don't believe you have it and takes different action. I mean, that's, that is a different scenario than when you have this, than when you have this longstanding, well settled, well documented, confirmed diagnosis. And every step of the way here, the plaintiff needed an expert. I think that the Judge Cullen, and we did assert on alternative grounds and we did argue this below. And I think this court has the ability to do that is to affirm on alternative grounds and that is that in evaluating the evidence that we presented in combination with the prior declaration of Dr. O'Hein with the additional evidence that we provided in his second declaration that the evidence was not sufficient to overcome summary judgment on the issue of deliberate indifference. And so we asked the court to affirm a decision on that ground. Thank you. Thank you, Your Honor. I'd like to make just a few points on rebuttal. First off, Judge Wilkinson, I think I might have misunderstood sort of our, your questions and my answers. And I apologize if that's the case. What we'd like the court to hold is that no expert is required here on these facts and decide that issue conclusively, that no expert is required as a matter of law. To the extent Your Honor was talking about Dr. O'Hein's alternative argument below that summary judgment was appropriate because of the alternative declaration and their argument on appeal that the court could affirm on that basis. I agree with Your Honor that a remand to consider that ground because Judge Cullen never reached it would be appropriate. So I apologize if I misunderstood Your Honor's question. That's because Judge Cullen never decided whether to consider it. And Judge Cullen's decision whether to consider it or not would be reviewed for abusive discretion. So there's really no way for us to do that in the first instance now. Or at least that's one of the reasons. Yeah, one of the reasons, Your Honor, is that it's a very fact-heavy question that this court typically leaves to district courts in the first instance. I do think that there's support that if this court were to reach it, that the court would have to apply the reconsideration standard. And that's in U.S. Tobacco footnote eight. And, you know, we would argue that there's absolutely no basis to reconsider that declaration. It's not new in any sense. Are you contending that he should have made this part of the summary judgment record? That expert testimony where there was no summary of the expert's conclusion and it was handed in only at a very untimely point. The experts disregarded the timelines that were set by the district court. And they turned it in in an improper form without any kind of summary. You're not contending that there was an error in including or in excluding the expert testimony from the summary judgment record, are you? We have not challenged the district court's decision on the motion limiting. No, Your Honor, but we do believe that. So you're not challenged and you would accept the fact that the district court was correct in excluding it from consideration on summary judgment. Uh, Your Honor, yes. Once Judge Cullen excluded the experts, it was, you know, proper for him to reach the expert issue on summary judgment. Yes. And I'd like to make just a couple other points in response to Appellee's arguments. You know, this is not a misdiagnosis case. I think that's what a lot of the questions went to. There's evidence in this record that Dr. O'Hei knew that Mr. Phoenix had celiac disease throughout his time of treatment. There was an outside diagnosis that the doctor credited. And the doctor's questioning of the diagnosis is deliberate indifference and not a misdiagnosis for all of the reasons in the record why it was evident that Dr. O'Hei still believed that he had celiac disease. And importantly, as some of the questions indicated, the question is whether a jury could understand that type of evidence, and a jury could. It's based on lay testimony and documents like medical records. And to the extent that Dr. O'Hei and Mr. Phoenix ask a jury to resolve the inferences from the records differently, that's the stuff of juries, not of experts. And juries do that sort of thing all of the time. My third point, Your Honor, is that Appellee's other arguments about why an expert is needed here really don't move the needle. They say maybe an expert was required to talk about different testing methods for celiac disease or something like that. But many of these questions could have been raised in SINTO. And indeed, they could come up in every medical treatment case. But we know that experts aren't required as a general matter from SINTO. It would be a sea change in the law to require expert testimony here, and impossible to square with SINTO. That would mean that an expert is not needed to show whether blood sugar levels create a risk of harm, but needed on celiac disease. And it also conflicts with more recent decisions like Lowe. So here, Mr. Phoenix put forward a simple claim of deliberate indifference. He supported it with evidence that a jury could easily understand. And if the court has no questions, we would ask this court to reverse. All right. Thank you both so much. I really do appreciate it. We will come down and shake hands. And you know why I can't. This mask is a telltale sign. But thank you so much. And we'll adjourn court until tomorrow at 830. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court. Thank you.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Toby J. Heytens